No. 17,693.

O. OTTO MOORE, ET AL., AS TRUSTEES OF GEORGE W. CLAYTON COLLEGE v. CITY AND COUNTY OF DENVER, ET AL.

(292 P. [2d] 986)

Decided January 30, 1956.

Mr. Alex B. Holland, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Floyd B. Engeman, Assistant, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

George W. Clayton died in Denver on the 15th day of August, 1899, leaving a last will and testament that was drawn in 1892, which was admitted to probate in due course in what is now the county court of the City and County of Denver.

The testator made certain bequests and disposed of the residue of his property, amounting to several million dollars by creating and establishing a general public charitable trust, under what is designated as paragraph "Fourteenth" of said will.

The trust provided for the establishment of what was to be named the George W. Clayton College in Denver, Colorado, for the instruction and maintenance of as many male orphans of a certain specified class as the institution could accommodate upon opening and as funds might accumulate to expand the facilities to admit and accommodate more orphan boys.

The will provided for the naming of trustees to operate the trust and named the City and County of Denver as trustee of the fund.

A board of trustees as designated, changing in personnel according to time and conditions, has, since 1909,

maintained, managed and supervised the George W. Clayton College, constructed according to directions and the terms of the will. Nothing to the contrary appearing, it will be presumed that the boards of trustees as constituted operated the college generally in close compliance with the terms of the will as to the number and class of orphans to be admitted; however, under the long period involved there has been a sizable accretion in the fund far beyond the requirements for the care, maintenance and education of what has been at times a rather limited number of orphans admitted under a strict interpretation of the eligibility terms of the will.

Concerned as to what was, or is, the proper interpretation of certain provisions of the will which seriously affect the operation of the college, and desiring to providently manage the trust imposed, the present board, now plaintiffs in error, filed a petition for "construction and instructions" concerning the will in the county court on November 3, 1954.

Respondents answered the petition by admitting knowledge of the problems adverted to in the petition; that there are serious questions of interpretation of the will; that respondents have disagreed as to such interpretation; and that it is advisable that a judicial construction and interpretation of the will be had. The court, on February 9, 1955, entered its findings and order to the general effect and in agreement with counsel for both parties, that the doctrine of cy pres has no application, and that the terms of the will as expressed are conditions and not preferences.

In specifying the conditions for qualification or eligibility to enter the college, the testator as a part of paragraph "Fourteenth" used the following language:

"As many poor, white male orphans—and by the term *Orphan,* is ment, [meant] any child whose father is dead—between the ages of Six, and ten years, born of reputable parents, as the income shall be adequate to maintain, shall be admitted into the College, as soon as

possible, after the opening thereof; and from time to time thereafter, as there may be vacancies, or as increased ability from income may warrant, others shall be admitted: but in giving admission, preference shall be given—1st to orphans born in and belonging to, the County of Arapahoe, and, 2nd, to Orphans born in and belonging to other Counties in the State of Colorado."

Regardless of the laudable desire of the board of trustees to accommodate orphan boys generally, since there is a large increase in the fund by which facilities could be provided and the beneficiaries maintained and educated, the intent of the testator as expressed must control.

Counsel for petitioners contends that the testamentary trust is a public charity which lodges discretion in the trustees and should be accorded the most liberal construction; that the phrase "whose father is dead" was intended to enlarge rather than narrow the class of eligible beneficiaries; the ambiguous use of the word "others" should be resolved as referring to the general and not the special class of orphan children; and that the court misinterpreted the will to mean that at all times under all circumstances, an absolute condition of orphan eligibility for admission as a beneficiary of the trust is that the male parent be dead.

The present position and argument of petitioners is not consistent with their position as found by the trial court that the "cy pres" doctrine does not apply to this action. There is never any question of cy pres unless it is clearly established that the specific directions of the testator cannot be carried into effect. In admitting that the cy pres doctrine does not apply it is tantamount to saying that the terms of the will involved are specific, understandable and can be carried into effect. That being true, judicial construction must not be used in effect, to redraft the document. Petitioners have not shown the impracticability of executing the express provisions of the trust. If the present circumstances arising from

economic conditions prevent carrying out the terms of the will a different question would be presented. The fact that there is an increase in the fund and facilities and a decrease in the number of orphans cared for does not prevent exact compliance with the terms of the will. If such showing had been made the petitioners would be in position to make application upon the doctrine of approximation or equitable deviation which seems to be the modified "cy pres" doctrine in effect in Colorado. *Fisher v. Minshall,* 102 Colo. 154, 78 P. (2d) 363. The Colorado cases cited by petitioners do not disclose that this court indulged in liberal construction in order to liberalize language of a charitable trust as established here and in long operation, but, in order to validate a charity, some liberal construction was used.

▮ The testator, before making the gifts set out in paragraph "Fourteenth," used the following language: "* * * and I do hereby expressly declare that all the bequests and devises in this section of my will, made of the said residue of my estate, to the said Corporation of the City of Denver, are made upon the following express conditions—* * *."

Therefore, the testator certainly indicated a special kind or class of "poor, white male orphan" children. Can there be any question about the intended special class? We think not. The testator made it clear that he had in mind only one class of orphans, namely, "* * * poor, white male orphans * * * whose father is dead * * * between the ages of Six and ten years, born of reputable parents * * *." If petitioners find any comfort in general language used in the will it must be supplanted by the specific terms just quoted. Use of the words in paragraph "Fourteenth" "* * * and from time to time thereafter, as there may be vacancies, or as increased ability from income may warrant, others shall be admitted * * *" had reference to those of the class already described and designated, because this was a

further provision under what testator had said were "express conditions."

■ From our study of the internal evidence relative to the "Girard" will as a pattern, *(Vidal et al. v. Girard's Executors,* 43 U.S. 127, 11 L.Ed. 205) it is our opinion that the will here under consideration clearly evidences a more definite intent as to restrictions in the beneficiaries than does the Girard will. This is true because the testator here enlarges upon some of the identical terms contained in the Girard will. Girard's beneficiaries might be any orphans, depending on what the word "orphan" means as an accepted legal term. The testator here defined the orphans as intended beneficiaries to be a child whose father was deceased, and a further and final requirement that the child be born of reputable parents. No such requirements or restrictions are found in the Girard will. The authority given the trustees here to select the object of the testator's bounty as interpreted by this court in *Clayton v. Hallet,* 30 Colo. 231, 70 P. 429, is a grant of authority to the trustees, if necessary, to select the particular individuals from the specified class of eligibles. The terms of the will cannot be read with the meaning that the trustees were authorized to either enlarge the class or determine the qualifications.

We see no occasion to further discuss each specification of the class of beneficiaries intended, because as already indicated, it is clear that the trial court rightfully determined that the qualifying words of the will in question were conditions and not preferences, and therefore it necessitated that each beneficiary meet all of the conditions before being eligible for admission to the college.

The judgment is affirmed.

MR. JUSTICE MOORE did not participate in the consideration of this case.